IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MELVIN J. HARRIS,

        Plaintiff,

vs.                             Case No. 14-2411-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits.  The matter has been fully briefed by the
parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

3

requires the agency to consider vocational factors (the
claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

     The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th
Cir. 1993).   At step five, the burden shifts to the
Commissioner to show that the claimant can perform other work
that exists in the national economy.  Nielson, 992 F.2d at 1120;
Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The
Commissioner meets this burden if the decision is supported by
substantial evidence.  Thompson, 987 F.2d at 1487.

     Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);
416.920(a)(4), 416.920(e,f,g).

## II.  History of case

     On March 1, 2013, administrative law judge (ALJ) Kyle E.
Andeer issued his decision (R. at 26-41).  Plaintiff alleges
that he had been disabled since November 1, 2010 (R. at 26).
Plaintiff meets the insured status requirements for social
security disability benefits through December 31, 2015 (R. at

28).  At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 28).  At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 28).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 28).  After determining plaintiff's RFC (R. at 30), the ALJ found at step four that plaintiff could not perform past relevant work (R. at 39).  At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 40).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 41).

**III.  Did the Appeals Council err by failing to consider the opinions expressed by Dr. Medvedeva on June 27, 2013 and November 6, 2013?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

5

When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

The ALJ gave greater weight to the opinions of two non-examining physicians (R. at 38).  The first was a report by Dr. Markway, dated August 8, 2011, which found that plaintiff had moderate impairments in the ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, interact with the public and respond appropriately to changes in the work setting (R. at 305-319).  On November 10, 2011, Dr. Bergmann-Harms made similar findings, including a moderate limitation in working around others (R. at 123-125).

Also before the ALJ was a neuropsychological assessment by Dr. Sumerall at the Veterans Administration (VA), dated October 21, 2011 (R. at 353-355).  It was performed at the request of plaintiff's treating physician, Dr. Medvedeva (R. at 31).  Dr. Sumerall interviewed plaintiff and conducted a battery of tests on the plaintiff (R. at 353-354).  Based on the interview and tests, Dr. Sumerall concluded that plaintiff will have considerable difficulty recalling recently presented information, that repetition would essentially be of no help, and reminders will not bring mnemonic[1] functioning into the average range.  Plaintiff will tend to process information quite slowly.  Dr. Sumerall concluded that each of these difficulties will negatively impact his capacity to successfully engage in employment activities (R. at 355).  The ALJ concluded that Dr. Sumerall's opinions were not entitled to substantial weight because they conflict with the plaintiff's treating physician, Dr. Medvedeva, who, according to the ALJ, indicated that plaintiff was more functional (R. at 32).

One of plaintiff's treatment providers was Dr. Huet.  He treated plaintiff from June 21, 2012 through November 27, 2012 (R. at 512).  He prepared a report dated December 4, 2012 (R. at 512-519).  Out of 20 categories, Dr. Huet found plaintiff markedly limited in 15 categories and moderately limited in 5

---

[1] Mnemonic, or anamnestic is defined as assisting the memory.  Stedman's Medical Dictionary (25th ed. 1989 at 974, 66).

categories (R. at 515-517).[2]  He further opined that plaintiff was incapable of even low stress jobs (R. at 518).  Dr. Huet stated that he believed that plaintiff would miss work more than 3 times a month because of impairments and treatment (R. at 519).  He opined that these limitations have existed since about June 2009 (R. at 519).  The ALJ gave little weight to this assessment, noting that Dr. Huet's own treatment notes indicated plaintiff improved under his care.  The ALJ also relied on the treatment notes of Dr. Medvedeva, another treatment provider, to discount the opinions of Dr. Huet.  Furthermore, the ALJ stated that he believed Dr. Huet was "sympathetic" to the plaintiff (R. at 39).

The ALJ issued his decision on March 1, 2013.  The Appeals Council was provided with two reports from Dr. Medvedeva, plaintiff's treatment provider.  The first report, dated June 27, 2013 (R. at 73-80), notes that Dr. Medvedeva treated plaintiff from July 25, 2011 through June 25, 2013 (R. at 73). In this report, Dr. Medvedeva noted psychological limitations resulting in frequent interference with attention and concentration, that plaintiff is incapable of even low stress work, and that plaintiff is unable to work.  Dr. Medvedeva

---

[2] A marked limitation effectively precludes the individual from performing the activity in a meaningful manner; a moderate limitation significantly effects, but does not totally preclude the individual's ability to perform the activity (R. at 514).

opined that plaintiff would miss work more than three times a month as a result of the impairments or treatment (R. at 78-79).

In the second report, dated November 6, 2013 (R. at 82-89), Dr. Medvedeva noted treatment from July 25, 2011 through September 24, 2013 (R. at 82).  Out of 20 categories, Dr. Medvedeva opined that plaintiff was moderately limited in 7 categories,[3] and markedly limited in 3 categories.[4]  Dr. Medvedeva further opined that plaintiff is incapable of even low stress work, and would miss work more than 3 times a month because of his impairments and treatment (R. at 88-89).

The Appeals Council stated that the two reports from Dr. Medvedeva are about a later time, and therefore do not affect the decision as to whether plaintiff was disabled as of March 1, 2013, the date of the ALJ decision (R. at 2).  Plaintiff contends that the Appeals Council erred because the reports from Dr. Medvedeva do relate to the period on or before the date of the ALJ decision.

The basic principle, derived from the relevant regulations, is well-established: the Appeals Council must consider

---

[3] Plaintiff's moderate limitations include limitations in the ability to remember locations and work-like procedures, the ability to understand and remember 1 or 2 step instructions, the ability to carry out detailed instructions, the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance, the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to accept instructions and respond appropriately to criticism from supervisors, and in the ability to respond appropriately to changes in the work setting (R. at 85-86).

[4] Plaintiff's marked limitations include the ability to understand and remember detailed instructions, the ability to maintain attention and concentration for extended periods, and the ability to be aware of normal hazards and take appropriate precautions (R. at 85-87).

additional evidence offered on administrative review-after which
it becomes part of the court's record on judicial review-if it
is (1) new, (2) material, and (3) related to the period on or
before the date of the ALJ's decision.  Krauser v. Astrue, 638
F.3d 1324, 1328 (10th Cir. 2011).  Where the Appeals Council
rejects new evidence as non-qualifying, and the claimant
challenges that ruling on judicial review, it is a question of
law subject to the court's de novo review.   Id.

There is no doubt that the reports from Dr. Medvedeva is
new, and is material regarding the issue of plaintiff's
impairments and limitations.  The critical question before the
court is whether it is related to the period on or before the
date of the ALJ's decision, March 1, 2013.  The Appeals Council
held that the new information from Dr. Medvedeva "is about a
later time" (R. at 2).  Although Dr. Medvedeva's reports are
dated June 27, 2013 and November 6, 2013, Dr. Medvedeva
indicates in these reports that he began treating plaintiff on
July 25, 2011 and continued to see him through September 24,
2013 (R. at 73, 80, 82, 89).  However, in these reports, Dr.
Medvedeva did not indicate the earliest date in which his
description of symptoms and limitations applied (R. at 79, 89).

On October 21, 2011, Dr. Sumerall, following a battery of
testing, noted significant limitations.  These included
considerable difficulty recalling recently presented information

10

with repetition essentially being of no help, and a tendency to process information quite slowly.  Dr. Sumerall concluded that these difficulties would negatively impact plaintiff's ability to successfully engage in employment activities (R. at 354, 355).  The ALJ discounted the opinions of Dr. Sumerall because of the ALJ's conclusion that plaintiff's treating physician, Dr. Medvedeva, indicated that plaintiff was more functional (R. at 32).

Dr. Huet, who treated plaintiff from June 21, 2012 through November 27, 2012, opined that plaintiff had numerous marked limitations and could not even tolerate low stress work (R. at 512-519).  The ALJ discounted his opinions, noting that he only began treating plaintiff in 2012, and cited to records from Dr. Medvedeva who had reported that plaintiff's medications were working (R. at 39).

Thus, the ALJ rejected the opinions of Dr. Sumerall and Dr. Huet, relying in part on the reports from Dr. Medvedeva.  For this reason, the opinions provided to the Appeals Council from Dr. Medvedeva (who treated plaintiff from July 2011 through September 2013) that plaintiff has numerous limitations and is unable to work are quite material in that they provide some support to the opinions of Dr. Sumerall, who made conclusions based on a battery of tests performed on plaintiff in October

2011, and Dr. Huet, another treatment provider (who treated plaintiff from June through November 2012).[5]

The ALJ clearly relied on the treatment records and the treatment notes from Dr. Medvedeva to discount the opinions of both Dr. Sumerall and Dr. Huet.  The ALJ specifically stated that the opinions of Dr. Sumerall conflict with the claimant's treating physician (Dr. Medvedeva) who, in the opinion of the ALJ, indicated that plaintiff was more functional (R. at 32). The ALJ also found that the opinions of Dr. Huet conflicted with the treatment notes of Dr. Medvedeva and Dr. Huet (R. at 39). However, Dr. Medvedeva offered opinions that provide some support to the opinions of Dr. Sumerall and Dr. Huet. Therefore, the opinions of Dr. Medvedeva are clearly material and appear to relate to the period on or before the date of the ALJ's decision.  Furthermore, an ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors.  Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004).  At a minimum, it appears that both Dr. Huet and Dr. Medvedeva clearly differ from the ALJ regarding the meaning and significance of the treatment notes.

In the case of Baca v. Department of Health and Human Services, 5 F.3d 476, 479 (10th Cir. 1993), the court held that

---

[5] By contrast, the reports relied on by the ALJ are from non-examining sources who are generally entitled to the least weight. Dr. Markway's opinions, dated August 8, 2011, predate the assessment by Dr. Sumerall and the opinions from two treatment providers, Dr. Huet and Dr. Medvedeva.  The report from Dr. Bergmann-Harms, dated November 10, 2011, predates the opinions from Dr. Huet and Dr. Medvedeva.

evidence bearing upon an applicant's condition subsequent to the
date upon which the earning requirement was last met is
pertinent evidence in that it may disclose the severity and
continuity of impairments existing before the earning
requirement date or may identify additional impairments which
could reasonably be presumed to have been present and to have
imposed limitations as of the earning requirement date.  This
principle equally applies to whether evidence presented to the
Appeals Council is related to the period on or before the date
of the ALJ's decision.  This is especially true when the
treatment provider providing the opinion after the ALJ decision
began providing treatment 1 ½ years before the ALJ decision, and
when the ALJ was relying on that treatment provider's medical
reports to discount the opinions of another treatment provider
and a medical source who performed an assessment on the
plaintiff using a battery of tests.  The court cannot say that
the failure to consider this additional opinion evidence from
Dr. Medvedeva is harmless error,[6] especially when his opinions
provide some support to the opinions of Dr. Sumerall and Dr.
Huet.  In fact, the new evidence from Dr. Medvedeva provides a

---

[6] Courts should apply the harmless error analysis cautiously in the administrative review setting.  Fischer-Ross v.
Barnhart, 431 F.3d 729, 733 (10th Cir. 2005).  However, it may be appropriate to supply a missing dispositive
finding under the rubric of harmless error in the right exceptional circumstance where, based on material the ALJ
did at least consider (just not properly), the court could confidently say that no reasonable factfinder, following the
correct analysis, could have resolved the factual matter in any other way.  Fischer-Ross, 431 F.3d at 733-734; Allen
v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

basis for changing the ALJ's decision.  Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004).

For the reasons set forth above, the court finds that the opinions offered to the Appeals Council from Dr. Medvedeva are new, material, and related to the period on or before the date of the ALJ's decision.  The Appeals Council erred by failing to consider this evidence.  Therefore, this case shall be remanded in order for the ALJ to consider this evidence.

In light of the fact that this case is being remanded for the reasons set forth above, the court will note one issue not raised by the parties in the hope of forestalling the repetition of avoidable error.  Chapo v. Astrue, 682 F.3d 1285, 1292 (10th Cir. 2012).  In his decision, the ALJ stated that Dr. Huet was "possibly" sympathetic to the claimant (R. at 39).  However, the ALJ offered no evidence in support of this assertion, which was one of the bases set forth by the ALJ for discounting the medical opinion.  Because the ALJ had no legal or evidentiary basis for this finding, it was an improper basis for discounting the opinion.  Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004).

## IV.  Did the ALJ err in her credibility analysis?

Plaintiff argues that the ALJ failed to properly evaluate plaintiff's credibility.  The court will not address this issue because it may be affected by the ALJ's resolution of the case

on remand after considering the opinion evidence from Dr. Medvedeva.   See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 18th day of November 2015, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge